IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00435-KLM

JOSEPH CARTER,

    Plaintiff,

v.

JOAN KOPRIVNIKAR, M.D.,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and/or for Summary Judgment** [#16][1] ("Motion"). Plaintiff, who proceeds in this matter pro se,[2] filed a Response [#22], and Defendant filed a Reply [#27]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#16] is **GRANTED in part** and **DENIED in part**.

---

[1] "[#16]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

## I. Background

Plaintiff Joseph Carter is an inmate in the custody of the Colorado Department of Corrections ("CDOC") at San Carlos Correction Facility in Pueblo, Colorado. *Am. Compl.* [#7] at 2. Plaintiff filed this civil action on March 2, 2015 against Defendants Joan Koprivnikar, M.D., a CDOC prison psychiatrist; Tiffany Holubek, a legal assistant in a CDOC law library; and Lieutenant John Scoleri, a CDOC hearing officer. *Compl.* [#1]. In his Complaint, Plaintiff appeared to allege violations of the First, Eighth, and Fourteenth Amendments as a result of his involuntary medication by CDOC personnel. *Id.* However, these allegations were unclear. As a result, the Court issued an Order on March 4, 2015 finding that the Complaint failed to provide a short and plain statement of his claims in compliance with Rule 8 and ordered Plaintiff to file an Amended Complaint. *Order* [#6] at 2-3.

Pursuant to the Court's Order, Plaintiff filed his Amended Complaint on March 20, 2015. *Am. Compl.* [#7]. In the Amended Complaint, Plaintiff asserts one claim: "Use of Involuntary Medication to Commit Corporal Punishment in Direct Violation of [Eighth] Amendment Prohibitions of Such." *Id.* at 4-5. Specifically, Plaintiff alleges that Defendant Koprivnikar violated his constitutional rights by recommending that Plaintiff be involuntarily medicated.[3] *Id.* at 10-17. This claim is only brought against Defendant Koprivnikar, and neither Mr. John Scoleri nor Ms. Tiffany Holubek are named as Defendants (or otherwise mentioned) in the Amended Complaint. *Id.*

---

[3] The Amended Complaint does not specify when Plaintiff was involuntarily medicated, but rather attaches a report from Defendant dated March 6, 2014, which details Defendant's decision to recommend involuntary medication of Plaintiff to CDOC. *Id.* at 10.

On July 6, 2015, Defendant filed the present Motion seeking dismissal of Plaintiff's claim. *Motion* [#16]. At the outset, the Court notes that Defendant has essentially made two separate requests for relief in a single motion which seeks: (1) dismissal pursuant to Rule 12(b)(6) on Plaintiff's claim alleging a constitutional violation under either the Eighth or Fourteenth Amendment;[4] and (2) summary judgment pursuant to Rule 56 on the basis that Plaintiff failed to exhaust his administrative remedies prior to filing suit. *Id.* In support of her request for summary judgment, Defendant has attached and relies on an affidavit. *See Affidavit of Anthony DeCesaro* ("Affidavit") [#16-1]. Because this evidence is submitted outside the pleadings, the Court considers it only with respect to Defendant's request for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

Thus, the Court will first address the arguments for dismissal under Rule 12(b)(6) for failure to state a claim for a constitutional violation, and proceed to address the issue of administrative exhaustion pursuant to Rule 56.

## II. Standard of Review

### A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to

---

[4] As discussed below, it is unclear whether Plaintiff brings his claim under either the Eighth or Fourteenth Amendments, or both, and thus Defendant presents arguments analyzing Plaintiff's claim under both of these legal frameworks.

weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] that the pleader is entitled to relief," as required by Rule 8(a). *Iqbal*, 552 U.S. at 679 (second brackets

added; citation and internal quotation marks omitted).[5]

## B. Motion for Summary Judgment

The purpose of a motion for summary judgment pursuant to Rule 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56, the Court must dismiss Plaintiff's claims without prejudice if the evidence presented does not create a genuine issue of material fact as to whether Plaintiff's claims against Defendant were properly exhausted. *Gatlin v. Brown*, 2014 WL 1818245, at *4 (D. Colo. 2014) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden

---

[5] The only document outside of the pleadings considered by the Court relating to Defendant's argument for dismissal is the report of Defendant Koprivnikar. *See Am. Compl.* [#7] at 10-17. Because this document was submitted as an attachment to Plaintiff's Amended Complaint, it is properly considered in conjunction with the arguments for dismissal for failure to state a claim. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogation recognized by Eisenhour v. Weber County*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

### III.  Analysis

**A.     Excessive Force**

As a preliminary matter, the Court notes that Plaintiff's Amended Complaint does not clearly allege how Defendant purportedly violated Plaintiff's constitutional rights. For example, while Plaintiff alleges that Defendant violated the Eighth Amendment's prohibition on cruel and unusual punishment by involuntarily medicating him, Plaintiff also alleges – in the same section – that the "use of involuntary medicating protocols . . . flies in the face of due process of law." *Am. Compl.* [#7] at 5.

However, to the extent that Plaintiff seeks to allege an Eighth Amendment violation, such a claim lacks merit and must be dismissed. To allege excessive force, a Plaintiff must allege that Defendant submitted her report "maliciously and sadistically" in order to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain

and restore discipline or maliciously and sadistically" to cause harm. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

Here, Plaintiff makes no allegation that Defendant acted out of malice in an attempt to cause harm, and instead only alleges that Defendant submitted a report recommending involuntary medication for "disciplinary purposes" and that, because the report was falsified, such a measure was unwarranted. *Am. Compl.* [#7] at 4-5. Indeed, Plaintiff himself actually acknowledges that Defendant's motive in recommending that he be involuntarily medicated was *not* malicious, but instead disproportionate, as he alleges that: "[Defendant] should not be permitted to punish the Plaintiff with the application of involuntary medication for disciplinary purposes **due to the Plaintiff being a troublesome and disruptive prisoner**[.]" *Id.* at 5 (emphasis added). Such allegations relate to the appropriateness of the disciplinary action taken and do not implicate the Eighth Amendment. *See also Howard v. Memnon*, No. 3:10 CV 81 J 32JBT, 2013 WL 1175256, at *18 (M.D. Fla. Feb. 12, 2013) (dismissing as frivolous an excessive force claim brought against a doctor for authorizing involuntary medication), *report and recommendation adopted*, No. 3:10 CV 81 J 32JBT, 2013 WL 1175253 (M.D. Fla. Mar. 21, 2013) *aff'd*, 572 F. App'x 692 (11th Cir. 2014).

Accordingly, Plaintiff's claim under the Eighth Amendment must be dismissed.[6]

---

[6] Similarly, the Court also notes that Plaintiff has not stated a claim for deliberate indifference to a medical need, as he does not allege an act or omission indicating "deliberate indifference" to a serious medical need, nor do his allegations otherwise resemble a claim for deliberate indifference to medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976); *see also Whitney*, 113 F.3d at 1173-74 (a court will not "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf."). Instead,

**B.     Due Process**

Although Plaintiff does not clearly allege a due process violation under the Fourteenth Amendment, the Complaint's many references to an alleged violation of due process as well as the primary thrust of Plaintiff's allegations against Defendant support the determination that his claims are better construed as such. *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  Indeed, Plaintiff's Amended Complaint is premised entirely on the allegation that Defendant filed a falsified report to justify having him involuntarily medicated, and he claims that Defendant "use[d] . . . the Involuntary Medication Protocols to 'shut up' the Plaintiff" and that "[a]t base this is a case of liable or slander by a psychiatrist[.]" *Am. Compl.* [#7] at 5. Therefore, the Court will construe Plaintiff's allegations as asserting a violation of due process.

   *1.     Substantive Due Process*

Prior to analyzing Defendant's argument for dismissal, the Court notes that Plaintiff's allegations do not clearly indicate whether he intends to bring a claim for violation of his substantive due process rights or procedural due process rights, and Defendant devotes argument to both.  The Supreme Court has distinguished the two as follows:

> [T]he substantive issue involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing

---

Plaintiff argues that he did *not* need the medication at issue. *Am. Compl.* [#7]. Indeed, based on Plaintiff's own admission that he was harming himself, and banged his head to force CDOC personnel to place him in restraints because he "was enraged and malicious," it is plausible that a claim for deliberate indifference to medical needs could arise were Defendant to have *not* recommended involuntary medication.

> state interests might outweigh it. The procedural issue concerns the minimum procedures required by the Constitution for determining that the individual's liberty interest actually is outweighed in a particular instance.

*Mills v. Rogers*, 457 U.S. 291, 299 (1982).

The seminal case discussing the constitutionality of involuntarily medicating an inmate is *Washington v. Harper*, 494 U.S. 210, 226 (1990). In *Harper*, the Court stated that an inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Harper*, 494 U.S. at 221-22. The Court then addressed under what circumstances the State's interests outweighed the inmate's liberty interest, and held that "the Due Process clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 226.

Here, the prison's threshold requirement for involuntarily medicating an inmate is set forth in CDOC Administrative Regulation 700-23 ("AR 700-23"). *See* Colorado Department of Corrections, Admin. Reg. No. 700-23 (effective April 1, 2014). Prior to the administration of involuntary medication to an offender, AR 700-23 requires that a psychiatrist determine that the offender "suffers from a mental illness and, as a result of the illness, constitutes a serious threat of harm to self or other[.]" *Id.* § IV(A)(1). This not only falls squarely within the purview of the holding in *Harper*, but it is nearly identical to the regulation upheld in *Harper*, which allowed for involuntary medication only if an inmate "(1) suffers from a 'mental disorder' and (2) is 'gravely disabled' or poses a 'likelihood of serious harm' to himself, others, or their property." *Harper*, 494 U.S. at 215. Because the regulation appears to adequately define and protect the constitutional interest in accordance with

applicable law, the Court finds that Plaintiff has failed to state a claim for violation of his substantive due process rights.

    2.    *Procedural Due Process*

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). While it is true that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff*, 418 U.S. at 555-56. In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.* Second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.* at 1149.

As noted above, Plaintiff has a protected liberty interest to be free from forcible injections. *Harper*, 494 U.S. at 221-22. The Court in *Harper* also discussed what procedures may adequately safeguard this interest in the prison context. While a judicial hearing is not required, the Supreme Court has held that a hearing that provides "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses" meets the requirements of due process. *Harper*, 494 U.S. at 235. Indeed, the Court remarked that "an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Id.* at 230. Thus, the Court held that "[a]bsent evidence of resulting bias, or evidence that the actual decision is made before the hearing, allowing [an inmate] to

contest the staff's position at the hearing satisfies the requirement" of the "opportunity to be heard" at a meaningful time and in a meaningful manner. *Id.* at 235.

It is clear here that Plaintiff's primary challenge is predicated on an allegation that the procedure itself was defective, as he argues that the Defendant's report was falsified and specifically claims that he was not a danger to others and "has never assaulted any person within the Colorado Department of Corrections." *Am. Compl.* [#7] at 4.

AR 700-23 details the relevant procedural safeguards prior to involuntary medication of an inmate. After a psychiatrist has determined that a prisoner "suffers from a mental illness and, as a result of the illness, constitutes a serious threat of harm to self or others," AR 700-23 § IV(A)(1), an offender "ha[s] a right to a hearing on the issue" conducted by an "Involuntary Medication Hearing Committee" (the "Commitee"). *Id.* § IV(C)(1), (2)(a). The Committee, composed of a hearing officer, a psychiatrist, a psychologist, and one other mental health clinician, is responsible for making a determination as to whether an offender requires involuntary medication. *Id.* § IV(C)(2)(c). The offender is entitled "to be present and be heard" at the hearing, may "cross-examine DOC . . . witnesses," and may appeal the decision of the Committee. *Id.* § IV(C)(1), (3)(a). Prior to the hearing, both a psychiatric provider and a unit mental health clinician are required to submit involuntary medication reports. *Id.* § IV(C)(3)(c), (d). Among other requirements, a psychiatric provider is required to identify recommended medications in her report. *Id.*

Defendant argues that Plaintiff's claims should be dismissed, contending that CDOC's procedures comport with the Due Process Clause and Plaintiff does not actually allege that CDOC failed to follow these procedures. *Motion* [#16] at 18. Further, Defendant notes that Plaintiff does not deny much of the information contained in

Defendant's report, such as Defendant's statements that Plaintiff threatened others and threatened to harm himself, and thus that Plaintiff's disputes with the content of the report are "distinctions without a difference for the purposes of establishing that Defendant violated Plaintiff's . . . due process rights."[7] Thus, Defendant appears to be arguing that the report would have constituted a sound basis for the Committee's decision of involuntary medication irrespective of whether certain parts were allegedly falsified.

However, Plaintiff has adequately alleged that prison procedures were not appropriately followed by asserting that the report was falsified. Moreover, despite Defendant's contention that there are no allegations in the Amended Complaint that demonstrate that the procedures may have been improperly followed, there is at least one instance in Defendant's report itself that indicates otherwise: at the end of her report, Defendant notes that "Trilafon was chosen as his involuntary medication. Mr. Carter correctly noticed that Trilafon had not been on the involuntary medication list." *Am. Compl.* [#7] at 17; *see also* AR 700-23 § IV(C)(3)(c) ("The treating psychiatric provider will prepare a report for the . . . Committee which . . . . is to include, . . . **what types of psychiatric medication are being recommended**[.]") (emphasis added). Accordingly, the Court cannot find that Plaintiff has failed to state a claim for violation of his Fourteenth Amendment rights.

---

[7] Although Defendant makes this argument in support of her contention that Defendant did not violate Plaintiff's substantive due process rights, this argument pertains to the accuracy of the report, the creation and submission of which are parts of the *procedure* for involuntary medication. AR 700-23 § IV(C)(3)(c), (d). Hence, whether CDOC appropriately followed its procedures is a matter of procedural due process; not substantive due process.

**C.     Qualified Immunity**

Defendant also asserts qualified immunity. A government official is entitled to qualified immunity from liability for civil damages when his allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807. Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or [Court of Appeals for the] Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *overruled in part on other grounds by Williams v. City & County of Denver*, 99 F.3d 1009, 1014-15 (10th Cir. 1996).

Here, Defendant argues that Plaintiff fails to meet either prong of the test. Regarding

the first prong of the test, Defendant argues that she is entitled to qualified immunity because "Plaintiff fails to allege a viable claim for the violation of his rights under either the Eighth or Fourteenth Amendments." *Motion* [#16] at 20.  As for the second prong, she contends that "there is no clearly established law indicating that Plaintiff has a right to be free from involuntary medication despite a psychiatrist's finding that he is gravely disabled and presents a serious risk of harm to others[.]" *Id.*

With respect to Defendant's first argument, the Court has already determined that Plaintiff has sufficiently alleged a claim under the Fourteenth Amendment for violation of due process, and thus this argument lacks merit.  Defendant's second argument is a misrepresentation of both the standard and Plaintiff's allegations; the relevant inquiry is not whether there was an "established law indicating that Plaintiff has a right to be free from involuntary medication despite a psychiatrist's finding that he is gravely disabled," it is whether there was a clearly established law that the *alleged* misconduct was unlawful.  *See Katz*, 533 U.S. at 202 *.*  Here, Plaintiff alleges that he was deprived of due process by virtue of CDOC's reliance on the alleged falsified report submitted by Defendant, *see Am. Compl.* [#7], and it is undisputed that Plaintiff has a constitutional right to due process prior to being forcibly injected with medication.  *Harper*, 494 U.S. at 229.  Defendant does not argue that a reasonable person in her circumstances would have been unaware that the submission of a false report that ultimately resulted in the involuntary medication of an inmate would compromise an inmate's due process rights and – given the Supreme Court's decision in *Harper* and CDOC's own regulations providing for a hearing and due process – the Court finds such an argument implausible.  *See Motion* [#16] at 19-20.

Thus, the Court denies Defendant's request to dismiss Plaintiff's complaint for failure

to state a claim.

**D.     Exhaustion**

Defendant asserts that summary judgment is appropriate because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this case. *Motion* [#16] at 3-4.

The PLRA provides as follows:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner plaintiff is not required to specifically plead that he has exhausted his available administrative remedies or to attach exhibits proving exhaustion to his complaint. *Jones*, 549 U.S. at 216. The burden is therefore on a defendant to raise failure to exhaust as an affirmative defense in a motion for summary judgment. *Id.* If the evidence produced by the parties shows that there are no genuine factual issues preventing a finding that the plaintiff did not properly exhaust his available administrative remedies, the complaint must be dismissed without prejudice. *See Dawson v. Werholtz*, No. 07-3165, 2008 WL 1773866, at *1 n.1 (D. Kan. Apr. 16, 2008) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109,

1113 (10th Cir. 2007) (stating that dismissal of unexhausted claims on summary judgment should be without prejudice)).

To satisfy the PLRA exhaustion requirement, a prisoner plaintiff "must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88); *see also id.* ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." (citing *Booth v. Churner*, 532 U.S. 731, 740 (2001))). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust," *Jones*, 549 U.S. at 218, but compliance must be **complete**, i.e., the inmate must abide by **all** of the "agency's deadlines and other critical procedural rules," *Woodford*, 548 U.S. at 90-91. Complete compliance is required "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.*

Two regulations potentially apply to the issue of exhaustion in this matter. First, because this action involves the procedure for involuntarily medicating an inmate, the aforementioned AR 700-23's appeal process is relevant. AR 700-23 provides that "[o]ffenders faced with the possibility of involuntary medication have a right . . . to appeal the decision," § (IV)(C)(1), and further states that the appeal must be "in writing" and made "within 24 hours" of the decision. AR 700-23 §§ (IV)(C)(1); (IV)(C)(1)(3)(a)(9), (10).

16

Second, CDOC's general grievance process, set forth in Administrative Regulation 850-04 ("AR 850-04") also may potentially apply. *See Affidavit* [#16-1] at 5-15 (containing copy of AR 850-04). This process involves three steps. *Id.* at 6-12 . At each step, an inmate must complete and submit a grievance form and then wait a period of time to receive a response from a CDOC official. *Id.* An inmate has not exhausted his administrative remedies until he has received a denial of his step three grievance form. *Id.* at 11 ("Step 3 grievance responses shall be . . . served upon the offender. The decision of the grievance officer is the final agency action.").

Here, Defendant primarily focuses on AR 850-04, and argues that because Plaintiff failed to file Step 2 and Step 3 Grievances after his Step 1 Grievance was returned and marked as "resolved," he has failed to fully exhaust his administrative remedies pursuant to the PLRA and judgment should be entered in her favor.[8] *Motion* [#16] at 5. Although Plaintiff does not dispute that he did not file Step 2 and Step 3 grievances, he claims that he could not file these Grievances because "CDOC staff refused to provide grievance forms so the Plaintiff could file . . . Step Two and Step Three forms in 2014, due to the Defendant giving CDOC employees orders stating that the matter was resolved, . . . which . . . was never the case[.]" *Response* [#22] at 2.[9]

---

[8] Defendant also argues that three Step 1 Grievances filed by Plaintiff in June 2015 – which was after he filed the present action in this Court – also fail to meet the exhaustion requirement. *Motion* [#16] at 4. However, Plaintiff does not appear to claim or argue that these Grievances exhausted his administrative remedies. *See Response* [#22].

[9] Plaintiff also states that "CDOC does not provide carbon copy forms so as to ensure fairness in the grievance process," and therefore because the process is unfair, he need not follow it. *Id.* at 3. However, this argument, at most, only disagrees with the *appropriateness* of CDOC's procedures. But "Plaintiff's disagreement with prison officials as to the appropriateness of a particular procedure under the circumstances, or his belief that he should not have to correct a procedural deficiency does not excuse his obligation to comply with the available process."

17

In essence, Plaintiff argues that he is excused from exhausting his remedies because he was prevented by CDOC from doing so. This is well-known exception to the requirement of administrative exhaustion. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.") (citation omitted); *Aquilar-Avellada v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that district courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust).

Defendant argues that Plaintiff's contention that he was denied access to grievance forms is conclusory and lacks any factual basis. *Reply* [#27] at 3. However, there is no evidence before the Court that demonstrates that grievance forms were available to Plaintiff after he filed his initial Step 1 Grievance. At best, the Affidavit submitted by Defendant states that "[Plaintiff] did not . . . file either a Step 2 or Step 3 grievance" relating to his April 2014 Step 1 Grievance. *Affidavit* [#16-1] ¶ 17. Further, Defendant argues in her Reply that "[e]ven if Plaintiff's case manager declined to provide him with a grievance form, Plaintiff could have obtained this form from the prison library[.]" *Reply* [#27] at 4. This argument is not corroborated by any factual evidence before the Court; rather, Defendant points to CDOC regulations that generally require that Administrative Regulations and grievance forms be made available to inmates. *Id.* This alone does not establish that Plaintiff actually

---

*Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010) (citation omitted). Thus, this argument lacks merit.

had access to the forms when Plaintiff claims that he did not. *See Jones*, 549 U.S. at 216.

Lastly, the Court notes that the parties do dispute whether Plaintiff filed an appeal pursuant to AR 700-23. Plaintiff claims that he did file such an appeal. *Response* [#22] at 5. Defendant argues that Plaintiff's argument lacks any evidentiary support. *Reply* [#27] at 7. This argument is not persuasive. Although there is no evidence before the Court indicating whether Plaintiff appealed the involuntary medication hearing, Defendant – not Plaintiff – has the burden of proving that Plaintiff has not exhausted his administrative remedies. *See Jones*, 549 U.S. at 216.

Defendant also contends that Plaintiff was required to exhaust his remedies under both AR 700-23 and AR 850-04, and thus if he did not exhaust his remedies under AR 850-04, it is irrelevant whether he exhausted his remedies pursuant to AR 700-23. Given that the Court has already found that Defendant has failed to show that Plaintiff exhausted his remedies pursuant to AR 850-04, this argument is moot. Nonetheless, the Court notes that other courts have concluded that, where there is both a specific grievance process pertaining to the alleged conduct and a general grievance process, the specific grievance process is the administrative remedy that must be exhausted. *See, e.g.*, *Branch v. Stoke*, No. CIV.A. 06-1839 (PGS), 2009 WL 483893, at *5 (D.N.J. Feb. 24, 2009) (holding that the specific appeal process applies in an involuntary medication action as opposed to the general grievance process); *Jones v. Bess*, No. 1:14-CV-3416-TWT-AJB, 2015 WL 8488581, at *2 (N.D. Ga. Oct. 29, 2015) (holding that Plaintiff did not exhaust his administrative remedies because he did not appeal the decision of involuntary medication), *report and recommendation adopted*, No. 1:14-CV-3416-TWT, 2015 WL 8492466 (N.D. Ga. Dec. 9, 2015).

Thus, the Court finds that there is a genuine issue of material fact regarding whether Plaintiff exhausted his administrative remedies, thus precluding the entry of summary judgment on this claim. *See Adler*, 144 F.3d at 670-71 (the burden is on the movant to show that there is no genuine issue of material fact).

## IV. Conclusion

Accordingly, for the reasons set forth above,

IT IS **ORDERED** that Defendant's Motion [#16] is **GRANTED in part** and **DENIED in part**. Plaintiff's Eighth Amendment claim is dismissed with prejudice. Plaintiff's Fourteenth Amendment substantive due process claim is dismissed with prejudice. Plaintiff's Fourteenth Amendment procedural due process claim remains for adjudication.

Dated: March 14, 2016

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge