IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00435-KLM

JOSEPH CARTER,

    Plaintiff,

v.

JOAN KOPRIVNIKAR, M.D.,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Summary Judgment** [#90][1] (the "Motion"). Plaintiff, who proceeds in this matter pro se,[2] filed a Response [#94], and Defendant filed a Reply [#102]. The Court has reviewed the Motion, Response, Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#90] is **GRANTED**.[3]

---

[1] "[#90]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] The parties have consented to proceed before the undersigned for all purposes pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *Order of Reference* [#28].

## I. Background

**A.     Procedural Background**

Plaintiff is an inmate in the custody of the Colorado Department of Corrections ("CDOC") at Centennial Correctional Facility in Canon City, Colorado. Plaintiff filed this civil action on March 2, 2015. *Compl.* [#1]. Plaintiff filed his Amended Complaint on March 20, 2015. *Am. Compl.* [#7]. In the Amended Complaint, Plaintiff appears to assert one claim: "Use of Involuntary Medication to Commit Corporal Punishment in Direct Violation of [Eighth] Amendment Prohibitions of Such." *Id.* at 4-5. Specifically, Plaintiff alleges that Dr. Joan Koprivnikar ("Defendant"), a psychiatrist, violated his constitutional rights by recommending that Plaintiff be involuntarily medicated.[4]  *Id.* at 10-17.

On July 6, 2015, Defendant filed a motion seeking dismissal of Plaintiff's claim. *Motion to Dismiss and/or for Summary Judgment* [#16]. On consideration of that motion, the Court ultimately construed the Amended Complaint [#7] as asserting three claims:  an Eighth Amendment excessive force claim, and substantive and procedural due process claims arising pursuant to the Fourteenth Amendment.  *Order* [#29]. The Court dismissed with prejudice the Fourteenth Amendment substantive due process claim and the Eighth Amendment claim. *Id.* at 20. The Fourteenth Amendment procedural due process claim is the sole issue that remains for adjudication. *Id.*

On March 3, 2017, Defendant filed the present Motion [#90] seeking entry of

---

[4] The Amended Complaint does not specify when Plaintiff was involuntarily medicated, but rather attaches a report from Defendant dated March 6, 2014, which details Defendant's decision to recommend involuntary medication of Plaintiff to CDOC. *Am. Compl.* [#7] at 10-17.

judgment in her favor on Plaintiff's remaining claim.[5]  In support of the Motion [#90], Defendant has attached her own affidavit, the applicable version of the CDOC regulation regarding administration of involuntary medication, and various records related to Plaintiff's mental health history.  *See Affidavit of Dr. Joan Koprivnikar* ("Affidavit of Dr. Koprivnikar") [#90-1]; [#90-1 through #90-6].  Plaintiff has not attached evidence to his Response, and instead relies on documentation previously filed by him or by Defendant in this matter.[6]

**B.    Factual Summary**[7]

Defendant is employed by CDOC as a staff psychiatrist.  *Motion* [#90] at 3.  Her responsibilities include evaluating inmates for signs and symptoms of mental illness, diagnosing mental disorders, treating inmates with psychotropic medications when appropriate, and evaluating any side effects.  *Id.*  She also makes recommendations for involuntary medication to inmates who pose a risk of harm to themselves or others, or are gravely disabled.  *Id.*  CDOC's Administrative Regulations outline the procedures and responsibilities for administration of involuntary medications to inmates.  *Id.*

Plaintiff was screened for mental health needs when he arrived at CDOC in 2012.  *Id.* at 9.  According to clinical notes taken by Dr. Jonathan Rosman, Plaintiff was refusing

---

[5] Plaintiff contends that the Motion [#90] should be stricken because it was untimely. *Response* [#94] at 9.  However, the Motion [#90] was filed on March 3, 2017, which was the applicable deadline.

[6] Plaintiff asserts that the Court should "revisit all claims" and re-evaluate the entire case. The Court declines to do so.

[7] The following summary construes the evidence in the light most favorable to Plaintiff, as the nonmovant.  *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant.").  To the extent that Plaintiff has not directly disputed Defendant's recitation of the facts, the Court cites to the Statement of the Facts provided in the Motion [#90].

all medications at that time and denied that he had any mental health issues. *Id.* at 10. Dr. Rosman diagnosed Plaintiff with "Depressive Disorder, NOS with possible psychotic features. Rule out Bipolar disorder. Rule out schizoaffective disorder. . . . He holds onto a fringe belief system, and may well be paranoid and delusional, but may also be merely eccentric." *Id.*

Plaintiff was referred to the San Carlos Correctional Facility ("SCCF") for diagnostic clarification, and was seen by Defendant on July 2, 2012. *Id.* at 10-11. Defendant noted, "r/o Delusional disorder, but to me presents much more as a weak personality (narcissistic traits) that has gotten involved in a likely small time anti-government group – feels important in it, feels he's a 'soldier' for the cause . . . will continue to watch." *Id.* at 11. Plaintiff was refusing medications and did not meet criteria for involuntary medications. *Id.*

Plaintiff was transferred to two other facilities over the next several months, and returned to SCCF by March 18, 2013. *Id.* at 11. Defendant's assessment at that time was, "r/o Delusional Disorder and Paranoid Personality (I see no evidence of borderline personality) vs. psychotic spectrum disorder such as schiz." *Id.* at 12. Several months later, on August 6, 2013, Defendant noted, "was thinking paranoid Pd, but thinking more than that now. Delusional d/o vs chronic, psychotic spectrum d/o - Schiz. IM demands to know why I think this, discuss the very nature of the disorders will likely prevent him from seeing what I'm seeing. IM says he's going to talk to his attorney about my opinion." *Id.* Defendant suggested antipsychotic medications, and Plaintiff refused. *Id.*

On January 7, 2014, Defendant saw Plaintiff after he had left a hearing. *Id.* at 13. Plaintiff said that he was going to "bang his head" and proceeded to do that. *Id.* Defendant noted that Plaintiff was

> extremely angry in the conf room, spouting what he claims are laws and violations of his rights. First he said he banged his head so he could go to court and say the officers beat him up, then says it's so he can sue us when we further violate his rights. Then says it's because he can. IM ult says he'll bang his head to force us to put him in restraints, then, in restraints he won't have access to his legal mail/work so then he can sue us for not allowing him legal access. He yells at me, 'if I could I would beat the fucking shit out of you.' Also threatens the officers. Tells the Capt that when he gets OOP that he will strap on an IED and kill us all. Im paranoid and delusional, + thought disorder. IM tells Pam King that he's going to continue to bang his head and also throw his body around the room to hurt himself further (this is before I arrive), then tells me he's not going to bang his head but is not going to eat for 1-2 weeks.

*Id.* at 13-14. By February 2014, Defendant determined that Plaintiff's mental health appeared gravely compromised and that he posed a risk of harm to himself or others. *Id.* Emergency medications were administered and Plaintiff was scheduled for an involuntary medication hearing before the Involuntary Medication Hearing Committee (the "Committee"). *Id.*

Defendant prepared a report in advance of the hearing regarding Plaintiff's mental health history, and provided a list of recommended medications. *Id.* at 14-15; *see also Feb. 20, 2014 Report* [#90-3] at 10-15. Defendant opined that if Plaintiff remained unmedicated, he would continue to decompensate and likely either harm himself or another person. *Motion* [#90] at 15. Defendant also noted that "all symptoms of mental illness evidently remitted at CMHIP [Plaintiff's previous facility] while he was taking an antipsychotic medication," but court-ordered medication was ceased after Plaintiff was found guilty of his crime. *Id.* She stated that Plaintiff likely "is an individual who decompensates slowly once off antipsychotic medications," which is why he did not appear to need them when he first arrived at CDOC. She further noted that Plaintiff "does not recognize that he has a mental illness and, to my knowledge, has never taken psychotropic medications on a voluntary

basis." *Id.* The Committee determined that Plaintiff should be involuntarily medicated. *Id.* at 16; *Feb. 24, 2014 Hearing Decision* [#90-3] at 18-19.

The Committee subsequently held a 180-day review hearing and determined that Plaintiff should continue to be involuntarily medicated. *Motion* [#90] at 18; *Aug. 18, 2014 Hearing Decision* [#90-3] at 29. The following 180-day review hearing was held on February 9, 2015, for which Defendant again prepared a report dated February 5, 2015. *Motion* [#90] at 19. The Committee determined that Plaintiff should continue being involuntarily medicated. *Id.* at 20. Sometime following the hearing, Plaintiff notified Defendant that his prescribed medication, Trilafon, was not included on the list of potential medications provided to the Commitee in the report. *Id.* at 19. Defendant discontinued use of Trilafon, and instead prescribed Plaintiff with a medication known as Haldol, which had been included on the February 5, 2015 list. *Id.* at 20. On February 25, 2015, Defendant met with Plaintiff, who reported that he did not like Haldol because he felt it made him shake and that it made him feel more depressed. *Id.* He requested to be put back on Trilafon if he was required to continue taking medication. *Id.*

Defendant prepared a new report, dated February 25, 2015, which included Trilafon on the list of proposed medications. *Id.*; *Feb. 25, 2015 Report* [#90-5] at 1-8. At the following hearing, the Committee again determined that Plaintiff should be administered involuntary medications, and Plaintiff was re-prescribed Trilafon. *Motion* [#90] at 21; *Mar. 2, 2015 Hearing Decision* [#90-5] at 10.

## II. Standard

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial

of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

### III.  Analysis

Plaintiff's Fourteenth Amendment procedural due process claim remains before the Court.  Procedural due process protects the individual against "arbitrary action of government."  *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  While it is true that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff*, 418 U.S. at 555-56.  In general, a plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001).  First, a plaintiff must demonstrate that he possesses a protected liberty or property interest.  *Id.*  Second, a plaintiff must show the procedures utilized in addressing his interest were inadequate under the circumstances.  *Id.* at 1149.

The seminal case discussing the constitutionality of involuntarily medicating an inmate is *Washington v. Harper*, 494 U.S. 210, 226 (1990).  In *Harper*, the Court stated that an inmate "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Harper*, 494 U.S. at 221-22.  The Court then addressed under what circumstances the State's interests outweighed the inmate's liberty interest, and held that "the Due Process clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 226.

Concluding that Plaintiff has a protected liberty interest in avoiding the involuntary administration of medication, *see Harper*, 494 U.S. at 221-22, the Court must next consider whether the procedures utilized here were adequate under the circumstances, *see Bartell*, 263 F.3d at 1149. While a judicial hearing to assess Plaintiff's need for medication is not required, the United States Supreme Court has held that a hearing that provides "notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses" meets the requirements of due process. *Harper*, 494 U.S. at 235.[8] Indeed, the Court remarked that "an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Id.* at 230. Thus, the Court held that "[a]bsent evidence of resulting bias, or evidence that the actual decision is made before the hearing, allowing [an inmate] to contest the staff's position at the hearing satisfies the requirement" of the "opportunity to be heard" at a meaningful time and in a meaningful manner. *Id.* at 235.

Plaintiff raises two challenges to the procedures utilized in his case: (1) the specific name of the involuntary medication he was given (Trilafon) was not included in the list of medications recommended in the February 5, 2015 report, and (2) the medical records relied on by Defendant in preparing her recommendation to involuntarily medicate Plaintiff were falsified. The Court considers each argument in turn.

## A.     Omission of Trilafon from February 5, 2015 Report

The prison's threshold requirements for involuntarily medicating an inmate are set forth in CDOC Administrative Regulation 700-23 ("AR 700-23"). *See* Colorado Department

---

[8] Thus, Plaintiff's argument that a court order is required for involuntary medication of an inmate is plainly incorrect. *See Response* [#94] at 20-21.

of Corrections, Admin. Reg. No. 700-23 (effective April 1, 2014). Prior to the administration of involuntary medication to a prisoner, AR 700-23 requires that a psychiatrist determine that the inmate "suffers from a mental illness and, as a result of the illness, constitutes a serious threat of harm to self or others or is gravely disabled[.]" *Id.* § IV(A)(1). After the psychiatrist has made such a determination, the inmate "ha[s] a right to a hearing on the issue" conducted by a Committee. *Id.* § IV(C)(1), (2)(a). The Committee, composed of a hearing officer, a psychiatrist, a psychologist, and one other mental health clinician, is responsible for making a determination as to whether an offender requires involuntary medication. *Id.* § IV(C)(2)(c). The offender is entitled "to be present and be heard" at the hearing, may "cross-examine DOC . . . witnesses," and may appeal the decision of the Committee. *Id.* § IV(C)(1), (3)(a). Prior to the hearing, both a psychiatric provider and a unit mental health clinician are required to submit involuntary medication reports. *Id.* § IV(C)(3)(c), (d).

As described in Section I.B. above, Plaintiff was first required to be involuntarily medicated at CDOC following a hearing that took place on February 24, 2014. *Feb. 24, 2014 Hearing Decision* [#90-3] at 18-19. Subsequent 180-day review hearings determined that Plaintiff should continue being involuntarily medicated. *Motion* [#90] at 18-20. On February 5, 2015, Defendant prepared an updated psychiatric report in advance of the February 9, 2015 review hearing that included a list of proposed medications as required. *Id.* at 19. The Committee determined that Plaintiff should continue to be involuntarily medicated. *Id.* at 20. At a meeting with Defendant after the Committee's determination, Plaintiff correctly pointed out that Trilafon had not been included on the list of proposed medications. *Id.* at 19. Thus, Defendant discontinued Plaintiff's Trilafon prescription and

prescribed a different medication, Haldol.  *Id.* at 20.  About a month later, Plaintiff reported to Defendant that he did not like the side effects of Haldol and requested to be placed back on Trilafon, if he was still required to take medication.  *Id.*  Defendant prepared a new report dated February 25, 2015, that included Trilafon on the list of proposed medications.  *Feb. 25, 2015 Report* [#90-5] at 1-8.  At a hearing on March 2, 2015, the Committee again determined that Plaintiff should be involuntarily medicated, and Plaintiff was given a new prescription for Trilafon.  *Mar. 2, 2015 Hearing Decision* [#90-5] at 10.

Plaintiff asserts that his procedural due process rights were violated because Trilafon was not included in February 5, 2015 list of medications.  AR 700-23 § IV(C)(3)(c) provides:

> The treating psychiatric provider will prepare a report for the Involuntary Medication Hearing Committee which . . . . is to include . . . what **types** of psychiatric medication are being recommended as potentially beneficial to the offender.  **The specific name or dose of medication need not be determined at the time of the hearing.**

(emphasis added).  First, it seems that Defendant's failure to include the specific name of the medication on the February 5, 2015 proposed medication list may not have violated the procedures listed in AR 700-23, as the "specific name or dose of medication need not be determined at the time of the hearing."  However, taking this evidence in a light most favorable to Plaintiff, there is a genuine issue with respect to interpretation of this language.  Nonetheless, the "update" given at the end of the February 5, 2015 report states that Plaintiff "is taking Trilafon because it does not require blood monitoring" and recommends "that [Plaintiff's] involuntary medications be continued on an involuntary basis for the next 180 days."  *Feb. 5, 2015 Report* [#90-4] at 7.  Thus, Trilafon was recommended by name

in the report, even though it was not mentioned in the list of proposed medications. *Id.* At the very least, this fact indicates that Defendant's failure to include Trilafon in the list was inadvertent.

Second, "even if prison officials did not strictly follow the prison's internal regulations, such failure would not constitute a violation of Plaintiff's right to due process." *See Frazier v. Zavaras*, No. 10-CV-02534-CMA-KMT, 2011 WL 4537004, at *9 (D. Colo. Aug. 9, 2011), *relevant part adopted*, No. 10-CV-02534-CMA-KMT, 2011 WL 4537001 (D. Colo. Sept. 30, 2011).[9] Additionally, mere negligence is not sufficient to form the basis of a section 1983 procedural due process claim. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Plaintiff has not directed the Court to any evidence in the record tending to suggest that Defendant's failure to include Trilafon in the February 9, 2015 report amounted to anything more than negligence. Although Plaintiff had previously been prescribed Trilafon, Defendant discontinued the prescription immediately when Plaintiff alerted her to the fact that it had not been on the list provided prior to the hearing. *Motion* [#90] at 20. Particularly considering that Plaintiff was already taking Trilafon and Defendant specifically recommended that Plaintiff continue taking Trilafon at the end of the February 5, 2015 report, it appears that the omission of Trilafon from the list was inadvertent. *Feb. 5, 2015 Report* [#90-4] at 7. Furthermore, Defendant took corrective actions (preparing an updated report and scheduling a new hearing) when

---

[9] This conclusion also would apply to Plaintiff's assertion that Defendant has violated other administrative regulations, such as AR 850-15, if those issues were properly before the Court. *See, e.g.*, *Response* [#94] at 3.

the error was discovered. Defendant's relevant undisputed actions therefore do not amount to a "deliberate decision" violating Plaintiff's guarantee of due process. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986) ("Historically, [the] guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.").

For the foregoing reasons, the Court concludes that there is no genuine issue of material fact with respect to Plaintiff's allegation regarding Defendant's failure to include Trilafon on the February 5, 2015 medication list.

**B.      Alleged Falsification of Medical Records**

Plaintiff contends that Defendant's February 25, 2015 report contained lies and did not form a legitimate basis for her diagnoses and opinion because she did "zero testing, or any at-length face to face, one on one interviews," and relied on the "secondhand statements of other mental health professionals." *Am. Compl.* [#7] at 5. Plaintiff clarified in the Response that Defendant "spent roughly around five (5) hours evaluating the Plaintiff over a three (3) year period of total time." *Response* [#94] at 29.

Plaintiff concedes that Defendant cannot be held responsible for the allegedly falsified documents that she did not create herself. *Response* [#74] at 19. Rather, Plaintiff asserts that Defendant knew that the "psychiatric information from [Plaintiff's previous facilities] was unreliable and thus falsified." *Response* [#94] at 17. However, Plaintiff does not direct the Court to anywhere in the record, nor could the Court locate such information on its own review, indicating that Defendant knew that the information contained in Plaintiff's mental health records was somehow inaccurate, unreliable, or falsified. Plaintiff's statement that he personally told Defendant that the records were unreliable is

unpersuasive. *See, e.g.*, *Hoyt v. Big Spring State Hosp.*, No. 6:15-CV-0003-BL, 2016 WL 7189844, at *12 (N.D. Tex. Dec. 8, 2016) ("[M]edical personnel must utilize a patient's statements in conjunction with their own observations and evaluations to determine a given patient's mental health.").

Additionally, the record shows that Defendant did not simply rely on other psychiatrists' evaluations in making the recommendation to administer involuntary medication; rather, Defendant observed Plaintiff's decompensation over the course of several months leading up to Plaintiff's threats to harm others that led to her conclusion that he was disabled and posed a danger of harm to others. *See Motion* [#90] at 13-14; *Feb. 20, 2014 Report* [#90-3] at 12. Specifically, Defendant's February 20, 2014 report in advance of the involuntary medication hearing states that she based her report on Plaintiff's "available Mental Health . . . records, offender interviews, and from observations of [him]." *Feb. 20, 2014 Report* [#90-3] at 10. Defendant further explained that Plaintiff's behavior had regressed to actually banging his head, stating that he would not eat for 1-2 weeks, threatening Defendant ('if I could I would beat the fucking shit out of you'), threatening the officers, and telling the captain that "he will strap on an IED and kill us all." *Id.* at 12. Defendant's opinion expressed in the report is that Plaintiff was "gravely disabled" and "a serious threat of harm to others" based on those observations. *Id.*

Moreover, Plaintiff's assertion that Defendant "falsified" records because Defendant's "assessments, opinions, and diagnoses are all based upon . . . Plaintiff's political views, beliefs, affiliations, alignment, and activities" is unsupported. *Response* [#94] at 1. Plaintiff cites to various parts of his medical records, for example a note stating that Plaintiff's "thinking was less intense about anti-government topics" and Defendant's

-14-

report stating that Plaintiff had told her about his "involvement with the Free American Militias," which he contends "proves" that Defendant "supports the political left" and decided to medicate him because of that. *Response* [#94] at 2, 4, 22. Plaintiff also at times asserts that he was involuntarily medicated due to his religion. *See, e.g., Response* [#94] at 6. However, on the face of the medical records, it is clear that Defendant merely performed her professional duty to evaluate Plaintiff's state of mind when commenting on Plaintiff's statements. *Response* [#94] at 2; *Feb. 20, 2014 Report* [#90-3] at 11-12. The record shows that Defendant did not administer medications until she concluded that he suffered from a grave disability and posed a serious threat of harm to others. *Feb. 20, 2014 Report* [#90-3] at 12. As discussed above, Defendant's decision to administer emergency medication and recommend that Plaintiff be involuntarily medicated for a longer period of time followed the threats he made. Defendant's reports show that, while she considered Plaintiff's prior mental health records, her recommendation to involuntarily medicate Plaintiff was ultimately based on her own observations. Plaintiff has failed to cite to any evidence indicating otherwise, and therefore, there is no genuine issue of material fact on this issue.

**C.    Qualified Immunity**

To the extent that Plaintiff sues Defendant in her individual capacity, Defendant asserts that she is entitled to qualified immunity. *Motion* [#90] at 35-37. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When defendants assert a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most

favorable to the plaintiff show a constitutional violation." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court must also consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

As discussed above, the Court has determined that no genuine issue of material fact remains with respect to Plaintiff's Fourteenth Amendment procedural due process claim. Having found no constitutional violation even when taking the facts in the light most favorable to Plaintiff, the Court need not consider whether the constitutional right was clearly established at the time of the alleged activity. *See Simkins*, 406 F.3d at 1241; *Pearson*, 555 U.S. at 236 (stating that the prongs of the qualified immunity test may be considered in any order). The Court concludes that Defendant is entitled to qualified immunity to the extent that Plaintiff asserts his claim against her in her individual capacity.

## IV. Conclusion

Accordingly, for the reasons set forth above,

IT IS **ORDERED** that the Motion [#90] is **GRANTED**. Judgment shall enter in favor of Defendant on Plaintiff's remaining claim, and the Clerk of Court shall close this case.

BY THE COURT:

Dated: March 22, 2018

Kristen L. Mix
United States Magistrate Judge